**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JAMES HICKS** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 3:19-cv-00382** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE HOLMES** |
| **TOWN OF SMYRNA, TENNESSEE** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is a motion to dismiss the First Amended Complaint by Defendant Town of Smyrna, Tennessee ("Smyrna"). (Doc. No. 28). Defendant filed a memorandum in support of the motion (Doc. No. 29), which incorporated the statement of facts and legal arguments from the earlier filed memorandum in support of its motion to dismiss the original Complaint (Doc. No. 10). Plaintiff filed a Response (Doc. No. 34) and Defendant filed a Reply (Doc. No. 38).

For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED** in part, **DENIED** in part.

## I.       BACKGROUND[1]

Plaintiff James Hicks is a police officer with the Town of Smyrna's Police Department. (Amd. Compl., Doc. No. 26, ¶ 1). He served as a Field Training Officer and patrol police officer. On December 1, 2018, Plaintiff conducted an investigatory stop of a juvenile in a residential area.

---

[1] For purposes of this Motion, the Court discusses only the facts relevant for the determination of the Motion to Dismiss.

The juvenile's mother arrived during the stop and accused Plaintiff of racially profiling her son. (*Id*., ¶¶ 25-37). On December 14, 2018, she filed a written complaint with Defendant accusing Plaintiff of racial profiling and released the complaint to the media. (*Id*., ¶¶ 53, 56). The accusations were reported in television news reports, newspaper articles, radio news, and online. (*Id*.).

Plaintiff states that he was instructed by his superiors not to discuss the incident with the media and that police department regulations prohibited him from contacting the media to clear his own name. (*Id*., ¶ 94). Plaintiff requested that the police department release the audio and video recordings to the public or conduct a "name-clearing hearing" so that he could address the allegations against him, but the requests were declined. (*Id*. ¶ 57-60, 70, 73, 87).

A department investigation concluded that Plaintiff had not racially profiled the juvenile in question, but that he failed to activate his recording equipment as required by police procedures and had "failed to communicate professionally" with the juvenile's mother. Plaintiff was removed from his position as a Field Training Officer, demoted, reassigned from active patrol duty to administrative duty, suspended for ten (10) days without pay, and ordered to attend "diversity training." (*Id*. at ¶¶ 66, 71, 75).

On December 21, 2019, the Smyrna Town Manager released the following statement to the media:

> The Town of Smyrna received a complaint on December 14, 2018, concerning a citizen/police encounter that occurred on December 1st of this year involving a juvenile in the area of Legacy subdivision. As a result of the complaint, the police administration conducted an investigation into the encounter with the individual.
>
> The individual was observed by the patrol officer walking across several residential properties while in unusually close proximity to private homes and porches. As this appeared unusual, he was stopped for questioning. During

2

the stop, the officer failed to utilize his lapel microphone for audio outside of the vehicle. An assisting officer arrived after the initial contact and his audio recorded the remaining period of the encounter. The internal investigation also indicated the officer failed to communicate professionally with the juvenile's parent. The officer has received a ten (10) day unpaid suspension, demotion as a field training officer, and will be required to participate in additional training.

The Town administration expects adherence to its policies and is resolute in maintaining the trust of its citizens; regardless of age, race, gender or nationality. Any complaint alleging violations of policy or professionalism is investigated and addressed in a timely manner in order to continue this trust with all of our residents. Additionally, the Town strives to be proactive through training and instruction. The Smyrna Police Department requires annual training through the Just and Fair Policing program of the State of Tennessee, as well as Diversity/Sensitivity training proctored by the Human Resources' Department. Ultimately, the municipality seeks to serve all of its citizens in a professional, courteous and safe manner.

(Amd. Compl., Doc. No. 26 at ¶ 61; Doc. No. 10-1).[2]

On December 21, 2018, Plaintiff met with Smyrna Chief of Police Kevin Arnold, Captain Todd Spearman, and Captain Jeff Dwyer and was informed of the disciplinary action against him. (Compl., Doc. No. 26, ¶ 73). Plaintiff again requested a name-clearing hearing, and the police chief told him, "James, we know you are not guilty of racial profiling." (Comp., Doc. No. 26, ¶ 74).

On January 16, 2019, Plaintiff sent a letter to the Smyrna City Attorney to appeal the disciplinary action against him. (*Id*., ¶ 81). On January 18, 2019, the Chief of Police responded by letter which stated in part: "[I]n review of the last sentence contained within the Disciplinary

---

[2]     The Complaint quotes a portion of the press release issued by the Smyrna Police Department. (*See* Compl., Doc. No. 26, ¶ 61). Defendant attached a complete copy of the press release to the motion to dismiss. (Doc. No. 10). For completeness, the entire statement is included here. Although materials outside the Complaint are generally not considered on a motion to dismiss, because the press release was referred to in the Complaint, the Court may consider it. *See Bassett v. National Collegiate Athletic Assn*., 528 F.3d 426, 430 (6th Cir. 2008).

3

Record, it has been determined the text could be interpreted as construing a violation of the SOP section 1-8 (Race Bias Profiling) occurred. The investigation did not reveal such and while no discipline was considered previously for this section of the SOP, in order to clarify a violation was not identified; this section of the Disciplinary comments will be removed." (Doc. No. 1-7). Plaintiff alleges this letter was placed in his personnel file, but not sent to him personally, released to the media, or otherwise made public. (Doc. No. 26, ¶ 84).

Plaintiff filed the original complaint in this case on May 7, 2019, alleging Defendant's refusal to hold a name-clearing hearing and publicly exonerate him of racial profiling constituted a deprivation of his liberty interest without due process in violation of the United States and Tennessee constitutions. (Doc. No. 1). After filing the complaint, Plaintiff applied for a position as detective with the Smyrna Police Department and was not selected. (Doc. No. 26, ¶ 101). Plaintiff alleges that based on Defendant's selection criteria for the detective position, he was "clearly more qualified for the Detective promotion than the two officers who received the promotions." (*Id.*, ¶ 129). On October 23, 2019, Plaintiff amended his complaint to assert that Defendant intentionally refused to promote him to Detective in retaliation for filing this lawsuit. (Doc. No. 26). Defendant moved to dismiss all claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged. *Id.*  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims.  *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.    ANALYSIS

### A.  Deprivation of a Liberty Interest Without Due Process

Plaintiff alleges he was deprived of his liberty interest without due process in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution.[3]

"The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in [his] 'reputation, good name, honor, and integrity.'" *Meyers v. Vill. of Oxford*, 739 F. App'x 336, 338 (6th Cir. 2018) (quoting *Crosby v. Univ. of Ky.*, 863 F.3d 545, 549 (6th Cir. 2017)).

---

[3]    Article I, Section 8 of the Tennessee Constitution is synonymous with the due process provisions of the federal constitution. *See Willis v. Tenn. Dept. of Correction*, 113 S.W.3d 706, 711 n.4 (Tenn. 2003) (citing *State v. Hale*, 840 S.W.2d 307, 312 (Tenn. 1992)); *see also*, *Heyne v. Metro. Nashville Bd. of Pub. Ed.*, 380 S.W.3d 715, 731 (Tenn. 2012) (noting that procedural due process protections in the United States Constitution and The Constitution of Tennessee are "essentially the same."); *Mid-South Indoor Horse Racing, Inc. v. Tenn. State Racing Comm'n*, 798 S.W.2d 531, 540 n. 16 (Tenn. Ct. App. 1990) (Article 1, Section 8 of the Tennessee Constitution is "synonymous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution").  Accordingly, the Court will analyze Plaintiff's federal and state due process claims together.

"That liberty interest is impugned when a state actor 'stigmatize[s]' an individual by means of 'voluntary, public dissemination of false information.'" *Crosby*, 863 F.3d at 555. "When a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or some job-related moral turpitude, the consequences are so nearly that of formally excluding him from his occupation that the law treat's the state's action in the same way and insists that due process be provided*." Lisle v. Metro. Gov't of Nashville and Davidson Cty.*, 73 F. App'x 782, 788 (6th Cir. 2003) (quoting *Lawson v. Sherriff of Tippecanoe Cty.*, 725 F.2d 1136, 1138 (7th Cir. 1984)); see also, Crosby, 863 F.3d at 555 ("[W]here a person's good name, reputation, honor or integrity are at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).

Damage to reputation alone is insufficient to state a claim. A plaintiff must also establish "[s]ome alteration of a right or status 'previously recognized by state law,' such as employment." *Quinn v. Shirley*, 293 F.3d 315, 319 (6th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)). In the employment context, "alteration of a right or status" has equated termination. *Id*. at 320 ("A name clearing hearing is required only if the employer creates a false and defamatory impression about a particular employee in connection with his termination.") (citing *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989)).

In *Quinn*, the court identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment … Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance… Third, the stigmatizing statements or charges must be made

6

in public.  Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Id*. (citing *Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000)).

The first *Quinn* factor was derived from the proposition that the damage to plaintiff's reputation must be accompanied by 'some alteration of a right or status previously recognized by state law' in order to implicate a liberty interest." *Crosby*, 863 F.3d at 556 (citing *Quinn*, 293 F.3d at 319).  To meet the second *Quinn* factor, a plaintiff must "demonstrate stigmatizing governmental action which so negatively affects his … reputation that it effectively forecloses the opportunity to practice a chosen profession." *Id*. at 557 (citing *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996)); *see also*, *Lisle*, 73 F. App'x at 788 (same).  Defendant argues Plaintiff cannot establish the first and second *Quinn* factors because he was not terminated from his employment and the statements by Defendant alleged "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance."

Plaintiff argues that the *Quinn* factors do not apply and that the Court should instead following the Sixth Circuit decision in *Meyers v. Village of Oxford*, 739 F. App'x 336, 338 (6th Cir. 2018).  *Meyers*, however, is inapplicable to the case at bar.  In *Meyers*, the court considered whether volunteer participants in the Mounted Police Colloquium were entitled to a name clearing hearing when they were removed as volunteer reserve officers even though they were not paid employees. *Id*. at 339.  The *Meyers* court recognized that a protected liberty interest in reputation and entitlement to a name-clearing hearing can arise outside of the employment context. *Id*. at 341.  *Meyers*, however, in no way disavowed application of the *Quinn* factors in employment cases.  To the contrary, *Meyers* states only that the *Quinn* test "that has developed in the employment context can easily be modified for use in non-employment cases."  *Id*.

7

Moreover, shortly before the *Meyers* decision, the Sixth Circuit applied the *Quinn* factors, including specifically the requirement of termination of employment, to a claim brought by a professor who had been removed from his position as Chair, but remained a tenured professor. *Crosby v. Univ. of Ky.*, 863 F.3d 545, 556 (6th Cir. 2017) ("Crosby cites no case, and we can find none, holding that removal from a nontenured administrative position constitutes a 'termination from employment' as required by the first *Quinn* factor."). Although the liberty interest claim in *Crosby* was ultimately dismissed on qualified immunity grounds, the court unquestionably applied the *Quinn* factors and suggested that the plaintiff could not meet the first or second factors requiring termination from employment and that the stigmatizing governmental action "effectively forecloses the opportunity to practice a chosen profession" when he continued to work as a professor. *Id.* at 556-57 (noting that the plaintiff was not foreclosed from his chosen profession, despite the fact that the stigmatizing allegations against him may very well have made him less attractive to other employers).

As this is a claim arising in the employment context, the Court will apply the *Quinn* factors. Plaintiff does not dispute that he remained employed as a police officer, but states that he was removed from his position as a field training officer and demoted. In *Lisle v. Metropolitan Gov't of Nashville and Davidson Cty.*, the Sixth Circuit addressed a similar situation. 73 F. App'x 782 (6th Cir. 2003). The plaintiffs in *Lisle* were patrol officers who were "disempowered" and transferred from patrol duty to clerical tasks. The transfer required the officers to surrender their badges, uniforms, weapons, cars, and other equipment. The Sixth Circuit examined whether this change in position to one of "'far beneath' the earlier position" could state a claim for deprivation of liberty interest and determined that it could not because the officers were not terminated. *Id.* at

8

789.  The court held that "where a state employee was not terminated incident to the unfavorable statement, there was no violation of the liberty interest protected by the Due Process Clauses." *Id*.

Plaintiff acknowledges that he remained employed as a police officer.  His employment was, therefore, not terminated.  Accordingly, Plaintiff's claim that "Defendant's actions have foreclosed other professional opportunities for advancement and promotion with Defendant, or professional opportunities with other employers," does not state a cognizable claim for deprivation of a constitutionally protected liberty interest under established Sixth Circuit precedent, and his due process claims under the federal and state constitution must be dismissed.

## B.  Retaliation in Violation of the Petition Clause

Plaintiff alleges Defendant did not promote him to a detective position in retaliation for his filing this lawsuit, thereby violating his First Amendment right to petition the Government for redress of grievances.  Defendant argues that Plaintiff did not engage in First Amendment protected activity because his lawsuit is not on a matter of public concern, but rather on a matter of purely personal concern – a name clearing hearing to clear his own name and reputation.

To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) that the plaintiff engaged in constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). A government employee engages in constitutionally protected activity when petitioning the government for redress of grievances only if the petition addresses a matter of public concern. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 393 (2011).  "As under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend

9

on 'the content, form, and context of [the petition], as revealed by the whole record.'" *Id*. at 398

(quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). A matter of public concern is one in which

"'it can be fairly considered as relating to any matter of political, social, or other concern to the

community', or when 'it is a subject of legitimate news interest; that is a subject of general interest

and value and concern to the public.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (internal citations

omitted). A petition aimed at airing or remedying grievances of a purely personal nature is

generally not a matter of public concern. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107

F.3d 1220, 1226 (6th Cir. 1997) (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

Defendant concedes that whether or not an individual officer was biased or racist "might

be construed as a matter of public concern," but argues that an individual officer seeking a name

clearing hearing to show he was not biased or racist is "a private concern for his own well-being."

(Def. Br., Doc. No. 29 at 7). Plaintiff acknowledges that the suit addresses his personal interests

– violation of his constitutional due process rights – but argues that the underlying issues – "police

misconduct and allegations of racial profiling by police" – are matters of public concern. The

Court agrees.

Allegations of racial profiling are a subject of "legitimate news interest; that is a subject of

general interest and value and concern to the public." *Lane*, 573 U.S. at 241. This view is borne

out by the level of news coverage of the allegations against Plaintiff specifically and national

public interest in racial profiling by police. The name clearing hearing sought by Plaintiff through

his due process claim was merely the mechanism by which he sought to inform the public that he

is not a police officer who engaged in biased or racist policing. The fact that Plaintiff would

personally benefit from clearing his name does not prevent the matter from also being of concern

to the public.

Accordingly, Defendant's motion to dismiss Plaintiff's claim of retaliation on grounds that the original complaint in this case does not address matters of public concern is denied.

## IV.    CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. No. 28) is **GRANTED** in part, **DENIED** in part.  An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

11